#28114-a-GAS
**2017 S.D. 62**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

NOEL CHICOINE and
TERESA CHICOINE,                                    Plaintiffs and Appellants,

v.

WILLIAM DAVIS and
CAROL DAVIS,                                        Defendants and Appellees,

        and

GREG PEARSON and PAMELA
PEARSON as TRUSTEES OF
PAMELA G. PEARSON REVOCABLE
TRUST, JAMES HALLING, DEBRA
HALLING, JAMES BRUNDISH,
KEVIN FETERL and JANET FETERL,          Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA
* * * *
THE HONORABLE MICHELLE K. COMER
Judge
* * * *

GREGORY J. BERNARD of
Thomas Braun Bernard
 & Burke, LLP
Rapid City, South Dakota                 Attorneys for plaintiffs and
                                         appellants.


JOHN R. FREDERICKSON
Deadwood, South Dakota                   Attorney for defendants and
                                         appellees William and Carol
                                         Davis.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 28, 2017
OPINION FILED **10/25/17**

#28114

SEVERSON, Justice

[¶1.]        Noel and Teresa Chicoine (the Chicoines) commenced this action asking that the circuit court declare that they have an access easement across Mineral Survey 1758 (M.S. 1758) into the adjoining Mineral Survey 1794. The circuit court found that no easement exists, either by grant or prescription. The Chicoines appeal the circuit court's determination, asserting that a public right-of-way exists across M.S. 1758 by grant. They do not appeal the denial of a prescriptive easement. We affirm.

## Background

[¶2.]        The Chicoine own real property within M.S. 1794 (a/k/a Clondyke subdivision). The Chicoines own lot 4 within the Clondyke subdivision. Lot 1 of the Clondyke subdivision shares a border with Mineral Survey 1758 and is north of the Chicoines' property. Five lodes comprise M.S. 1758: Lillah Fraction, Truro, Red Coat, Monday, and Red. Defendants William and Carol Davis own the Monday and Red Coat lodes. As the circuit court found below, a primitive road enters M.S. 1758 on the Lillah Fraction lode to the north and traverses southward across each lode. As the road traverses further south across the lodes, it becomes more primitive and overgrown. This is the road over which the Chicoines claim a right of way. Two relevant maps (Exhibits 2 and 33) are roughly combined below for reference. The map of M.S. 1758 is a surveyor drawing; the map of the Clondyke subdivision is a plat map. No plat of M.S. 1758 was entered into evidence.

-1-



FILED

NOV 03 2016

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM

FILED

NOV 03 2016

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
4TH CIRCUIT CLERK OF COURT
By

DATE: 07-22-2016
SCALE: 1"=400'
JOB NO: J2016-5

Section 13, T4N, R3E, BHM
Lawrence Co., SD

NOTE:
All easements for utilitie
hereon are for the specifi
owners or their assigns w
property herein being pla
unless replatted and dedi
quested by the Lawrence C

NOTES:
⊙ Denotes set 5/8" robar w
marked "Francis-Meador 1

● Denotes "Found Survey Mo

SEC. 1/16 LINE 7

OFFICE OF THE LAWRENCE COUNTY PLA
STATE OF SOUTH DAKOTA, COUNTY OF

Approved by the Planning Commissi
this _____ day of _____

Chairman, Planning Commission

ATTEST:

Secretary

CERTIFICATE OF DIRECTOR OF EQUALI

I, _____ Director of Equalization

DEPOSITION
EXHIBIT
2

-2-

[¶3.] The Chicoines' complaint alleged that they have an easement over the road, either by way of prescription or through the various plats and deeds to the Clondyke subdivision and M.S. 1758. The circuit court determined that the Chicoines do not have a prescriptive easement and that the road across M.S. 1758 is private. On appeal to this Court, the Chicoines do not challenge the circuit court's determination that no prescriptive easement exists. Instead, they claim that the M.S. 1758 conveyances preserve a public right of way on the existing road.

### Standard of Review

[¶4.] "Construction of a deed is a question of law." *Swaby v. N. Hills Reg'l R.R. Auth.*, 2009 S.D. 57, ¶ 22, 769 N.W.2d 798, 808. "We examine the instrument as a whole to determine what type of conveyance was intended." *Id.* (quoting *Tripp v. F & K Assam Family, LLC*, 2008 S.D. 78, ¶ 9, 755 N.W.2d 106, 109). "If the language of a deed leaves doubt on the intention of the parties, we will consider all the attendant circumstances existing at the time of execution." *Id.*

### Analysis

[¶5.] In 1995, a group of grantors owned all of M.S. 1758 and conveyed it to James Peterson and Gail Peterson as tenants in common. The warranty deed to the Petersons stated that the property was "[s]ubject to a statutory easement for a 66' road right of way along section line bounding or within the land herein described." Over the years, James Peterson conveyed the lodes to others.

[¶6.] In 1996, James Peterson entered into a purchase agreement with William and Carol Davis for the purchase of the Monday lode. The agreement provided in section 33 that "[e]asements for road right-of-way will be 66' wide. (Not

road surface)" and in section 36 that "Buyers give Seller the right-of-way across Monday to Red for road and utilities in the approximate location of the present dirt road. Seller will provide a gravel access drive approximately 10' wide (width of vehicle) from the approximate north boundary of M.S. 1758 to the north boundary of Red following present location of the present dirt road as much as possible. There will be no cul de sac at the end of the drive."

[¶7.]     In 1997, James Peterson executed a warranty deed to Gregory and Pamela Pearson, granting them the Red lode of M.S. 1758. The deed provided that the property was subject to terms and conditions, including that "[e]asements for road-right-way are reserved across each lode of M.S. 1758 and will be 66' wide. (Not road surface.)." It also provided that "Seller will provide a gravel access drive approximately 10' wide (width of a vehicle) from the approximate north boundary of M.S. 1758 to the north boundary of Red following present location." A warranty deed from the Pearsons conveying the property to Pamela G. Pearson and Gregory C. Pearson, Trustees of the Pamela G. Pearson Revocable Trust, contained the same language.

[¶8.]     In 2001, James Peterson executed a warranty deed for the Truro lode of M.S. 1758, granting it to Scott and Marcia McGregor. It included in its terms and conditions that "[e]asements for road right-of-way are reserved across each lode of M.S. 1758 and will be 66' wide." A warranty deed from the McGregors to James and Debra Halling granted the Hallings the Truro lode "SUBJECT TO existing road across M.S. 1758 for access to adjoining properties; statutory easement for 66' right

of way along section lines bounding or within the land herein described; and road easement and Restrictions for M.S. 1758 as set out in Plat Doc. No. 97-4078."*

[¶9.] Also in 2001, James Peterson granted, by warranty deed, to James Brundish the Red Coat lode of M.S. 1758. The deed provided that the property was subject to terms and conditions, which included "easements for section lines and road right-of-way are reserved across each lode of M.S. 1758 and will be 66' wide." In 2005, James Brundish conveyed the property through warranty deed to William and Carol Davis. The deed provided that the land was "[s]ubject to all reservations, easements and rights-of-way expressly conveyed or reserved in prior grants and/or deeds, or created by operation of Federal or State law."

[¶10.] Finally, in 2002, James Peterson conveyed the Lillah Fraction lode of M.S. 1758 to Howard and Kate Sickler. The warranty deed to the Sicklers also provided that "[e]asements for road right-of-way are reserved across each lode of M.S. 1758 and will be 66' wide. (Not road surface.)." The Sicklers executed a warranty deed in 2006 conveying Lillah Fraction to Maverick Motors, LLC and The 4L, LLC. The deed also provided that "[e]asements for road right-of-way are reserved across each lode of M.S. 1758 and will be 66' wide. (Not road surface)." A warranty deed from Maverick Motors, LLC and The 4L LLC conveyed the property to Kevin and Janet Feterl. The deed contained the same right-of-way language as the prior two deeds.

[¶11.] The Chicoines only appeal the circuit court's determination that the road is private. They contend that the language in the 1995 deed subjecting the

---

* It does not appear that the plat for M.S. 1758 was introduced into evidence.

-5-

land to a "statutory easement for a 66' road right of way along section line bounding or within the land herein described"—which was repeated in subsequent deeds related to the various lodes—refers to a *public* easement for a road. They further contend that a statutory, public road currently crosses each lode of M.S. 1758.

[¶12.]    "An easement may be dedicated to public use if the owner clearly acts to dedicate the easement and the public entity accepts the designation." *Knight v. Madison*, 2001 S.D. 120, ¶ 5, 634 N.W.2d 540, 542. No governmental entity has been joined to these proceedings. And no party has asserted that the government is an indispensable party. The government must be joined to an action seeking to declare a road public. *See J.K. Dean, Inc. v. KSD, Inc.*, 2005 S.D. 127, ¶ 18, 709 N.W.2d 22, 25-26 ("When an action is brought seeking or having the effect of declaring a road as dedicated to the public, the public entity that will be forced to maintain the dedicated road is an indispensable party to the action."); *Busselman v. Egge*, 2015 S.D. 38, ¶ 8, 864 N.W.2d 786, 789-90 ("[E]ven though Busselman is not attempting to force any governmental authority to maintain the service road, that is the effect of declaring it to be a dedicated road."). No party to these proceedings has indicated which governmental authority would be responsible for maintaining this road if it were declared to be public. Without the proper governmental entity joined in this action and no argument by the Chicoines that the road has been dedicated and accepted by the appropriate governmental entity, they have failed to demonstrate that the road is anything other than private. And it does not appear that the Chicoines even attempt to argue before this Court that they have a private interest in the road.

[¶13.] We agree with the circuit court's determination that the language in the deeds subjecting the property to a "statutory easement" unambiguously refers to the easements established by SDCL 31-18-1 and SDCL 31-18-2. SDCL 31-18-1 provides:

> There is along every section line in this state a public highway located by operation of law, except where some portion of the highway along such section line has been heretofore vacated or *relocated by the lawful action of some authorized public officer, board, or tribunal.*

(Emphasis added.) SDCL 31-18-2 provides:

> Every statutory section-line highway shall be sixty-six feet wide and shall be taken equally from each side of the section line, unless changed as provided in this title, but nothing herein contained shall prevent the highway authority charged with the construction, reconstruction, or repair of any public highway along a section line from purchasing or condemning right-of-way for widening the highway to more than sixty-six feet or from purchasing or condemning more right-of-way on one side of the section line than on the other, provided they deem it necessary so to do in order to provide a better highway, to avoid destruction of trees or valuable buildings or to avoid unsuitable terrain.

There is no dispute that the road is not along a section line, and there has been no argument that the road is a relocated section-line highway. *See* SDCL 31-18-3 (providing for the vacation or change of location of section-line highways). Therefore, on the record before this Court, we cannot determine whether the road in dispute is a section-line highway.

## Conclusion

[¶14.] The deeds to M.S. 1758 that include a "statutory easement" unambiguously refer to the section-line highways established by SDCL chapter 31-18. Alternatively, the requirements for a public easement by grant would need to

be demonstrated. The Chicoines have not met either burden in this case as they have failed to establish a right in the disputed road that traverses M.S. 1758 by grant in deeds or by statute. Therefore, we affirm.

[¶15.]        GILBERTSON, Chief Justice, and ZINTER and KERN, Justices, and WILBUR, Retired Justice, concur.