#30888-aff in pt & rev in pt-JMK
**2026 S.D. 22**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LESLIE TURGEON and
KAREN TURGEON,                                   Plaintiffs and Appellants,

v.

CITY OF SPEARFISH, a municipal
corporation,                                     Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MICHELLE K. COMER
Judge

* * * *

NATHAN R. CHICOINE of
DeMersseman Jensen Tellinghuisen
    & Huffman, LLP
Rapid City, South Dakota              Attorneys for plaintiffs and
                                      appellants.


RICHARD M. WILLIAMS
AIDAN F. GOETZINGER of
Gunderson, Palmer, Nelson
    & Ashmore, LLP
Rapid City, South Dakota              Attorneys for defendant and
                                      appellee.

* * * *

CONSIDERED ON BRIEFS
JUNE 2, 2025
OPINION FILED **04/08/26**

#30888

KERN, Retired Justice

[¶1.]	Leslie and Karen Turgeon own real property in Spearfish, South Dakota, which is only accessible via the Thoen Stone Road (the Road). The Road was created via an easement and right-of-way to access the Thoen Stone Monument, a historic marker that memorialized the discovery of gold in the Black Hills in 1834. The City of Spearfish (the City) owns the Thoen Stone Monument and the land surrounding it, which is operated as a city park. The Road has a locked gate at the northern entrance, which has existed for over forty years. The City provided the Turgeons with a key to the gate, which the Turgeons claim occasionally malfunctions, preventing their access to the Road.

[¶2.]	The Turgeons brought this declaratory action seeking a determination that the Road is a public right-of-way. They assert that an injunction should be issued requiring the City to remove obstructions that prevent their use and the general public's use of the Road. They also assert that the City should be prohibited from placing or maintaining a gate across the Road. On the parties' cross motions for summary judgment, the circuit court determined that the Road was not dedicated for public use until 2012, but that the City never accepted the dedication. The court, therefore, granted the City's motion for summary judgment and denied the Turgeons' motion. The Turgeons appeal. We affirm in part, reverse in part, and remand for trial.

**Factual and Procedural Background**

[¶3.]	The Thoen Stone was discovered on Lookout Mountain in 1887. It recounts the story of gold prospectors who traveled to the Black Hills in search of

-1-

gold in 1834, forty years before the Black Hills Gold Rush. A replica of the Thoen Stone, the Thoen Stone Monument, now sits at the end of St. Joe Street in Spearfish and is accessible via the Road.[1]

[¶4.]    Access to the Thoen Stone Monument was created in 1953 when Frank Thomson granted an easement and right-of-way to the City, the Thoen Stone Committee, and the State of South Dakota Historical Society (the 1953 Easement). The easement provided:

> That for and in consideration of the payment of One Dollar ($1.00) and other valuable consideration, the receipt of which is hereby acknowledged by the Party of the First Part, and the covenants and agreements hereinafter contained, the Party of the First Part does hereby Grant as Easement unto the Parties of the Second Part, jointly as joint tenants, an easement, Right-of-Way and privilege to establish a historic marker and Museum, including other Black Hills Historical events, of the Thoen Stone for public display, on the land near the City of Spearfish in the County of Lawrence, State of South Dakota, described as follows, to-wit:
>
> > A knoll of ground containing about two acres, situated in the Southwesterly part of the SW1/4NW1/4 of Section 15, in Township 6, North of Range 2, East of the B.H.M., together with the gravelled [sic] road right-of-way (25 feet wide), leading to the top of the knoll of ground, and subject to the Homestake Mining Company's powerline right-of-way, and more particularly described as being bounded on the West by the West side of the Homestake

---

1.    Although not contained in the record, the following information is of significant historical interest. The stone slab, dated 1834, recounts the story of Ezra Kind and his companions who traveled to the Black Hills in search of gold. The marker calls into question the date of the first discovery of gold in the Black Hills, which was previously thought to be 1874 after the Custer Expedition and the subsequent gold rush.

The stone, which was buried several feet below the surface, was discovered in 1887 by Louis Thoen on Lookout Mountain in Spearfish. The original stone is located in the Adams Museum and House in Deadwood. The replica sits above Spearfish at the end of the Thoen Stone Road east of town.

> Mining Company's powerline right-of-way, and on the
> South by the Ward's farm and on the East of the foot of
> the grassy hill and on the North by the gravelled [sic]
> road as now situated, thereon, together with the right of
> ingress and egress upon said above described land.

The 1953 Easement also stated that if "the Homestake Mining Company, or their successors in interest, should permit a suitable site to be selected on the spot where the Thoen Stone was originally found for display to the public, it is understood and agreed between the Parties hereto that the site herein granted and conveyed shall revert to the Party of the First Part, his heirs, executors, administrators and assigns."

[¶5.]     In 1971, Thomson subdivided the property by plat, creating three lots—37A, 37B, and 37C.  The plat was recorded with the Lawrence County Register of Deeds.  That same year, on November 30, Thomson and the City entered into an agreement (the 1971 Agreement) under which Thomson transferred Lot 37A to the City.  The 1971 Agreement set forth certain purposes and conditions, including that Lot 37A "known as the Thoen Stone Land, is to be used by the City of Spearfish exclusively for use as a City Park and for the enjoyment and historical interest centered around the Thoen Stone by the citizens and visitors to Spearfish, South Dakota."  The 1971 Agreement also stated that "if Lot 37A were not developed or used as a city park or if the City were to abandon it as a city park, the property would revert to Thomson, his heirs, executors or assigns."  The 1971 Agreement provided for access to Lot 37A by granting a "right-of-way for ingress and egress to said property *over the existing roadway*, more particular[ly] described as follows, it being agreed that such right-of-way shall be maintained by the City of

Spearfish and *shall not be fenced,* and further if said City Park is abandoned by the City of Spearfish, said right-of-way shall revert to the Seller, his heirs, executors or assigns." (Emphasis added.) This roadway began at the north boundary on Lot 37A and ended at the south line of Lot 37C.

[¶6.] Thomson executed a warranty deed, dated December 1, 1972, conveying Lot 37C-2, a subdivision of Lot 37C, to the City (the 1972 Warranty Deed). The conveyance was "for the use and purpose of maintaining a road to provide access to the Thoen Stone Monument Road." The warranty deed also stated that in "the event this property should cease to be used by the grantees for the purposes set forth above, the property conveyed is to revert to the grantor, his heirs, executors and assigns."

[¶7.] Finally, in 2012, the owners of property over which the previously existing Thoen Stone Road ran or abutted, including the City, filed a revised plat (the 2012 Plat), which created Lots 37A-1, 37A-2, 37B-1, 37B-2, 37C-2, and dedicated the Thoen Stone Road as a 70-foot "PUBLIC RIGHT-OF-WAY." There were no restrictions on how the public right-of-way could be used. When comparing the 1971 and 2012 Plats, the Road, as depicted on the 2012 Plat, appears to be extended farther to the north and south onto Lots 37A and 37C. The 2012 Plat was approved by the City on November 1, 2012. In its certification of ownership and approval of the 2012 Plat, the City stated the 2012 Plat "was done *at the City's request for the purposes indicated hereon.*" (Emphasis added.)

[¶8.] The Turgeons own property near the Thoen Stone Monument and they must use the Road to reach their property. The northern entrance of the Road is

secured by a locked gate, which has been in this location for at least forty years. The City issued keys to the gate to certain individuals, including the Turgeons, to allow them to access their properties that are adjacent to the Road. On occasion, the Turgeons' key to the gate has not worked properly, preventing them from unlocking the gate.

[¶9.]     It is the presence of the locked gate that is the impetus for the Turgeons' declaratory action, which they filed by complaint dated February 1, 2023. The Turgeons claim the gate is an unlawful obstruction of the Road, which they claim is a public right-of-way. The Turgeons allege the Road "was expressly dedicated as a public right-of-way by instrument since at least November 1, 2012," and that the City had "a contractual obligation to keep and maintain the Thoen Stone Road for the public's benefit to permit access to the Thoen Stone Monument located at the southern end of the road." The Turgeons sought a declaration that the Road is a public right-of-way, an order requiring the City to remove obstructions from the Road, and an injunction preventing the City from maintaining a gate across the Road "that obstructs or prevents" the Turgeons and the public from accessing and travelling on the Road.

[¶10.]     The City denies that the Road is a public highway and argues that while the 2012 Plat expressly dedicated the Road for public use, such dedication was never accepted by the City, either expressly or by implication. The City also argues there was no dedication of the Road as a public highway in the 1953 Easement, the 1971 Agreement, or the 1972 Warranty Deed.

[¶11.]     The parties filed cross motions for summary judgment, and a hearing was held on September 9, 2024.  The circuit court issued its ruling at the hearing, determining there were no disputed issues of material fact and concluding that none of the documents prior to the 2012 Plat show an intent by Thomson to dedicate the Road for use as a public highway.  But the court determined the 2012 Plat did show "an unequivocal dedication of the Thoen Stone Road as a public highway."  The court held, however, that there was no express or implied acceptance of that dedication, concluding:

> The City provided *limited* maintenance on [the Road] commensurate with the maintenance of [the Road] for pedestrian access to a public park, but has further limited access by means of posted park hours, and has prevented unrestricted vehicular travel by means of a locked gate for over forty years.

(Emphasis added.)  The court also found the existence of the gate was the "antithesis of public use."  Accordingly, the court granted the City's motion for summary judgment and denied the Turgeons' motion, effectively denying all of the Turgeons' requested relief.

[¶12.]     The Turgeons appeal, claiming the circuit court erred in concluding that the City did not accept the dedication of the Road as a public right-of-way.

## Standard of Review

[¶13.]     "Our rules for reviewing the entry 'of summary judgment under SDCL 15-6-56(c) [are] well settled.'" *Estate of Olsen v. Agtegra Coop.*, 2024 S.D. 39, ¶ 12, 9 N.W.3d 763, 768 (alteration in original) (citation omitted).

> Summary judgment is proper where, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

> judgment as a matter of law. We will affirm only when no genuine issues of material fact exist and the law was applied correctly. We make all reasonable inferences drawn from the facts in the light most favorable to the non-moving party. In addition, the moving party has the burden of clearly demonstrating an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Id.* (citation omitted). "We review a circuit court's entry of summary judgment under the de novo standard of review." *Id.* (citation omitted).

## Analysis and Decision

[¶14.]     To establish that the Road is for public use, the Turgeons must establish both (1) a dedication to public use and (2) the acceptance of such dedication by the City. *See Selway Homeowners Ass'n v. Cummings*, 2003 S.D. 11, ¶ 20, 657 N.W.2d 307, 313. The Turgeons argue that the Road was dedicated for public use in four possible ways: (1) the 1953 Easement, (2) the 1971 Agreement, (3) the 1972 Warranty Deed, and/or (4) the 2012 Plat. They maintain that the dedication was implied in some instances, while express in another, and that the acceptance of such dedication was either express or implied.

### *Whether the Thoen Stone Road was Dedicated for Public Use*

[¶15.]     This Court has defined the term "dedication" in property cases and accepted it as a legal term of art, as follows:

> Dedication is generally defined as the *devotion of property to a public use* by an unequivocal act of the owner that manifests an intention that the property dedicated shall be accepted and used presently or in the future. The intention of the owner to dedicate and acceptance thereof by the public are the essential elements of a complete dedication.

*Bergin v. Bistodeau*, 2002 S.D. 53, ¶ 16, 645 N.W.2d 252, 255 (citation omitted).

"Black's Law Dictionary defines 'dedicate' as '[t]o appropriate and set apart one's

private property to some public use; as to make a private way public by acts evincing an intention to do so.'" *Id.* ¶ 16, 645 N.W.2d at 256 (alteration in original) (quoting Black's Law Dictionary 412 (6th ed. 1990)). "The term 'dedication' is defined as '[a]n appropriation of land to some public use by or on behalf of the public[.]'" *Id.* (alterations in original) (citation omitted).

[¶16.] A dedication is either express or implied. We have held that "[a] dedication is express when the intent is manifested by oral or written words" and a dedication is implied "when the intent must be gathered from the acts of the dedicator." *Id.* ¶ 17 (citation omitted). In other words, "a dedication is express where the appropriation is formally declared[.]" *Id.* (citation omitted).

[¶17.] "A dedication 'is implied where it arises by operation of law from the owner's conduct and the facts and circumstances of the case.' An implied '[d]edication is premised on the doctrine of equitable estoppel.'" *Nelson v. Garber*, 2021 S.D. 32, ¶ 25, 960 N.W.2d 340, 347 (alteration in original) (citations omitted). "This is because when an owner's actions or conduct have been acted upon by the public and the Township, testimony that dedication was not intended will not be permitted to prevail against unequivocal acts and conduct on the part of the owner inconsistent with such intent, and upon which the public had a right to rely." *Id.* (citation omitted). However, we have explained:

> [O]wnership of land once had is not to be presumed to have been parted with; but the acts and declarations relied on to show a dedication should be unequivocal and decisive, manifesting a positive and unmistakable intention, on the part of the owner, to permanently abandon his property to the specific public use. If they are equivocal, or do not clearly and plainly indicate his intention to permanently abandon the property to the public, they are not sufficient to establish a dedication. The intention to

> dedicate must clearly appear, though such intention may be shown by deed, by words, or acts. If by words, the words must be unequivocal, and without ambiguity. If by acts, they must be such acts as are inconsistent with any construction, except the assent to such dedication.

*Brusseau v. McBride*, 245 N.W.2d 488, 491 (S.D. 1976) (alteration in original) (citation omitted). Conversely, an intent *not* to dedicate "is to be gathered from a consideration of all the facts" and such intent can be "evidenced in many ways, including express statements, objections to public use of the property, fencing or enclosing the property, and payment of taxes, etc." 11A McQuillin Mun. Corp. § 33:41 (3d ed).

[¶18.]     Here, the Turgeons claim an implied dedication via the 1953 Easement, the 1971 Agreement, and the 1972 Warranty Deed, and an express dedication via the 2012 Plat. We consider each in turn.

### a.     The 1953 Easement

[¶19.]     The Turgeons argue first that the 1953 Easement was an implied public easement.[2] "An easement may be dedicated to public use if the owner clearly acts to so dedicate it and the public entity accepts the dedication." *Tonsager v. Laqua*, 2008 S.D. 54, ¶ 9, 753 N.W.2d 394, 397 (citations omitted); *see also Tinaglia v. Ittzes*, 257 N.W.2d 724, 728–29 (S.D. 1977) (citations omitted); *Bergin*, 2002 S.D. 53, ¶¶ 15–17, 645 N.W.2d at 255–56. The scope of an easement "must be ascertained from the document itself: if its words are plain and unambiguous, 'the

---

2.     The City seems to argue that the 1953 Easement cannot become a dedicated *public highway*. However, we interpret the Turgeons' argument differently and conclude that the Turgeons' first argument is that the 1953 Easement was a dedicated public easement, not a dedicated public highway.

matter is concluded.'" *Tonsager*, 2008 S.D. 54, ¶ 6, 753 N.W.2d at 396 (citation omitted). "The terms of the grant, as they can be learned either by words clearly expressed, or by just and sound construction, will regulate and measure the rights of the grantee." *Id.* (citation omitted). "When the terms are 'clear, definite and unambiguous' it is 'unnecessary to resort to extrinsic facts or circumstances to determine its meaning or extent.'" *Id.* (citation omitted).

[¶20.]       The 1953 Easement stated in relevant part that Thomson granted to the City and the Thoen Stone Committee, "jointly as joint tenants, an easement, Right-of-Way and privilege to establish a historic marker and Museum, including other Black Hills Historical events, of the Thoen Stone for public display, on the land near the City of Spearfish." The Easement also contains a reversionary clause, providing that if the Thoen Stone were moved to a different location, the "site herein granted and conveyed shall revert to" Thomson.

[¶21.]       The Turgeons rely on the language "of the Thoen Stone for public display" to support their claim of implied dedication. This language, however, relates to the establishment of a historic marker and museum, which Thomson intended be utilized to house the Thoen Stone for "public display." The 1953 Easement does, in addition, grant the City a right-of-way to access the Thoen Stone marker, but there is no language describing that right-of-way that indicates Thomson's intent that it be used for any reason other than to access the marker. The plain language of the 1953 Easement therefore reflects a clear intent to limit access to those wanting to visit the Thoen Stone marker, which forecloses the Turgeons' argument. *See Clarke v. Tannin, Inc.*, 301 F. Supp. 3d 1150, 1158 (S.D.

Ala. 2018) ("Alabama cases have repeatedly emphasized that dedication cannot work in favor of a select subset of the public at large[.]").

[¶22.]     Further, the 1953 Easement contains a reversionary clause, stating that should the Thoen Stone marker be moved, the "site herein granted and conveyed" shall revert to Thomson. This clause defines the limitation on the use of the 1953 Easement and also indicates that it was not intended to be perpetual or irrevocable. Such language in the 1953 Easement, therefore, is indicative of an intent *not* to dedicate the easement to public use. As we stated in *Niemi v. Fredlund Township*: "[W]e do not presume dedication; the intent of the dedicator must demonstrate a *positive and unmistakable intent* to *permanently* abandon property for specific public use." 2015 S.D. 62, ¶ 32, 867 N.W.2d 725, 733 (emphasis added) (citation omitted). *See also* 11A McQuillin Mun. Corp. § 33:2 (3d ed) ("It is vital to a dedication of property to public use that it be forever and irrevocable after acceptance[.]"). Similarly, a "reservation of the right to revoke defeats the dedication." 11A McQuillin Mun. Corp. § 33:16 (3d ed.).

[¶23.]     The record evidence—including Thomson's express statement restricting access for a particular purpose, restricting access to a specific portion of the property containing the monument, and the reversionary clause retracting access if the Thoen Stone was moved to another location—evinces Thomson's intent *not* to dedicate the Easement to public use. *See* 11A McQuillin Mun. Corp. § 33:41 (3d ed.). Accordingly, we affirm the circuit court's conclusion that the 1953 Easement does not demonstrate a positive and unmistakable intent to permanently

abandon the property for public use and, therefore, did not constitute an implied dedication.

### b. The 1971 Agreement

[¶24.] The Turgeons next argue that the 1971 Agreement contained an implied dedication between Thomson and the City. When Thomson platted the property, creating three lots—37A, 37B, and 37C—he also entered into an agreement to transfer Lot 37A to the City. The 1971 Agreement set forth certain purposes and conditions, including that Lot 37A "known as the Thoen Stone Land, is to be used by the City of Spearfish exclusively for use as a City Park and for the enjoyment and historical interest centered around the Thoen Stone by the citizens and visitors to Spearfish, South Dakota." The 1971 Agreement also contained a reversionary clause, stating that "if Lot 37A were not developed or used as a city park or if the City were to abandon it as a city park, the property would revert to Thomson, his heirs, executors or assigns." The 1971 Agreement provided for access to Lot 37A by granting a "right-of-way for ingress and egress to said property over the existing roadway, more particular[ly] described as follows, it being agreed that such right-of-way shall be maintained by the City of Spearfish and shall not be fenced, and further if said City Park is abandoned by the City of Spearfish, said right-of-way shall revert to the Seller, his heirs, executors or assigns."

[¶25.] The Turgeons did not produce evidence to support a finding that the 1971 Agreement contained an implied dedication. As with the 1953 Easement, access granted by the 1971 Agreement is limited to the express purpose of the "enjoyment" of the "Thoen Stone" and it, too, contains a reversionary clause. Such

evidence is at odds with an "unmistakable intent to *permanently* abandon" the Road. *Niemi*, 2015 S.D. 62, ¶ 32, 867 N.W.2d at 733 (citation omitted). The circuit court, therefore, determined that like the 1953 Easement, the 1971 Agreement did not show an intent to dedicate. We agree and affirm the circuit court's conclusion that no dedication occurred under the 1971 Agreement.

### c. The 1972 Warranty Deed

[¶26.] The third way the Turgeons allege a dedication of the Road is through the 1972 Warranty Deed, through which Thomson conveyed Lot 37C-2 to the City. The circuit court determined that this deed did not concern any portion of the Road. Further, the stated purpose of the 1972 Warranty Deed was "for the use and purpose of maintaining a road to provide access to the Thoen Stone Monument Road." The Warranty Deed also stated that in "the event this property should cease to be used by the grantees for the purposes set forth above, the property conveyed is to revert to the grantor, his heirs, executors and assigns."

[¶27.] "Construction of a deed is a question of law." *Chicoine v. Davis*, 2017 S.D. 62, ¶ 4, 903 N.W.2d 544, 547 (citation omitted). "We examine the instrument as a whole to determine what type of conveyance was intended." *Id.* (citation omitted). "If the language of a deed leaves doubt on the intention of the parties, we will consider all the attendant circumstances existing at the time of execution." *Id.* (citation omitted).

[¶28.] Like the other documents relied on by the Turgeons, the 1972 Warranty Deed contained an express limitation regarding the use of the property conveyed, stating it was "for the use and purpose of maintaining a road to provide

access to the Thoen Stone Monument Road." The reversionary clause in the 1972 Warranty Deed also limits the purpose for which the property could be used. *See Niemi*, 2015 S.D. 62, ¶ 32, 867 N.W.2d at 733. The circuit court did not err in determining that there was not a dedication via the 1972 Warranty Deed.

### d. The 2012 Plat

[¶29.] The final way in which the Turgeons claim that the Road was dedicated for public use is through the 2012 Plat. The 2012 Plat contains unmistakable language indicating the owners' intent to dedicate the Road to public use, stating a 70-foot "PUBLIC RIGHT-OF-WAY DEDICATED THIS PLAT 2.99 ACRES." As we have previously concluded, "[w]ords contained in a plat such as 'dedicated as a 66 foot public right-of-way,' 'public highway' or 'public road' are obvious terminology that the road has been offered by the land owner to be dedicated as a public highway per SDCL 31-1-1." *Selway*, 2003 S.D. 11, ¶ 21, 657 N.W.2d at 313 (footnote omitted). The City does not dispute that the Road was expressly dedicated by the 2012 Plat. We agree that the 2012 Plat contains an express dedication. However, to prevail, there must not only be a *dedication*, but also an *acceptance* of such dedication by the City. *Bergin*, 2002 S.D. 53, ¶¶ 16–17, 645 N.W.2d at 255–56.

### Whether the City accepted the dedication

[¶30.] Like a dedication, the acceptance of such dedication can be express or implied. *See* 22B Am. Jur. 2d Dedication § 46 (stating that "[a]cceptance of an offer of dedication" can be either express or implied). The Turgeons first argue the City expressly accepted the dedication as evidenced by its request for the 2012 Plat, by

-14-

its approval of the Plat, and by the certification on the Plat as an owner. The 2012

Plat contains the following certification:

> I, JERRY KRAMBECK, MAYOR OF THE CITY OF
> SPEARFISH[,] DO HEREBY CERTIFY THAT THE CITY OF
> SPEARFISH IS THE OWNER OF STREET AND ALLEY
> RIGHTS OF WAYS DESCRIBED AS VACATED ON THE PLAT
> . . . AND THAT THE PLAT WAS DONE AT THE CITY'S
> REQUEST FOR THE PURPOSES INDICATED HEREON, AND
> THAT THE CITY DOES HEREBY APPROVE THE WITHIN
> PLAT OF SAID LAND.[3]

[¶31.]     The Turgeons' argument that such certification was an express

acceptance is contrary to SDCL 11-6-33, which states, "The approval of a plat by the

council shall *not* be deemed to constitute or effect an acceptance by the municipality

or public of the dedication of any street or other ground shown on the plat." SDCL

11-6-33 (emphasis added). However, unlike in other cases in which we have

addressed what constitutes an acceptance by a governing body, here, the City is one

of the *owners* of the property and its certificate of ownership states that the Plat

was done *at the City's request* for the purposes indicated on the Plat. This begs the

question: If the City was only keeping the Road open per the 1971 Agreement, as an

access road or path to the Thoen Stone Park, why would it request a plat dedicating

---

3.     The Turgeons state in their brief that a "public body can be shown to have
       accepted a dedicated public right-of-way by approval of a plat or expenditure
       of funds[.]" They cite *Nelson v. Garber*, 2021 S.D. 32, ¶ 30 n.6, 960 N.W.2d
       340, 348 n.6, for this assertion. However, *Nelson* does not support the
       Turgeons' claim, as they suggest. In *Nelson*, we stated that acceptance can
       be shown through the public's use, but noted that this "does not require the
       County or Township to maintain" the road at issue. *Id.* (citing SDCL 11-3-12
       which provides in part: "No governing body shall be required to open,
       improve, or maintain any such dedicated streets . . . solely by virtue of having
       approved a plat or having partially accepted any such dedication, donation or
       grant."). Thus, approval of a plat is not synonymous with acceptance.

this same roadway as a public right-of-way if it had no intent to expand the use of such roadway? It seems illogical that the City would, on the one hand, request a plat for purposes of dedicating a public right-of-way and dedicate some of its own property to either connect to, or become part of, such roadway, but then claim it never accepted such dedication.[4] When viewing the evidence in a light most favorable to the Turgeons, one could reasonably infer from the City's certification that it was an implicit acceptance of the expanded use of the Thoen Stone Road.[5]

[¶32.]     The Turgeons also argue that the City's acceptance of the dedication can be implied from the City's expenditure of funds to maintain the Road by conduct

---

4.     The City argues that the portion of the roadway on the City's Lot 37C-2 was part of St. Joe Street rather than the Thoen Stone Road. However, while the 2012 Plat shows the Thoen Stone Road connecting to the end of St. Joe Street, the boundaries of the City's Lot 37C-2 are hard to discern. When comparing the 1971 and 2012 Plats, it appears that the northern end of the Thoen Stone Road was extended onto the City's Lot 37C-2 when the 2012 Plat dedicated the Road for public use. According to testimony from the Turgeons, this is the area where the disputed gate is located. Because we determine below that there are genuine issues of material fact in dispute regarding the City's acceptance of the dedicated public right-of way shown on the 2012 Plat, further testimony may be needed to clarify these points, which are not clear from the existing exhibits and record.

5.     A similar inference could be drawn from the Spearfish Planning Commission staff report, presented below, pertaining to a 2016 rezoning request to revitalize the area that was previously used as an amphitheater for the Black Hills Passion Play and a campground. The report notes that the Thoen Stone Road serves as access to the proposed campground area, which is in the vicinity of the northern end of the Thoen Stone Road, rather than the southern end near the existing Thoen Stone Monument. The report makes no mention of having to open and designate the road as a public right of way for vehicular travel. Instead, it refers only to the need to improve the Road to a standard needed for this type of traffic. The report also includes the Thoen Stone Road, along with St. Joe Street and two other avenues, when referring to the need for upgrades to accommodate the increased traffic on the existing street network.

such as laying asphalt, placing a cattle guard, and mowing the ditches, and by others' use of the Road. Our previous decisions have recognized that the expenditure of funds, maintenance activities, and public use can demonstrate implied acceptance. *See Nelson*, 2021 S.D. 32, ¶ 30, 960 N.W.2d at 348 ("Because we have adopted the rule that acceptance of a dedication may be shown through use, the public's use of the road for almost forty years and the Bay Ridge subdivision's utilization of the road establishes acceptance." (citation modified)); *Miller v. Scholten*, 273 N.W.2d 757, 762 (S.D. 1979) (concluding "the township had accepted the dedication by expending public funds for grading, graveling, and maintaining the road"); *Haley v. City of Rapid City*, 269 N.W.2d 398, 400 (S.D. 1978) (finding acceptance of dedication, noting the "the utilization of the alley by utilities under a franchise from the city, the graveling of the entire alley by the city, the provision in the curb for ingress and egress, and the refusal of the city to vacate the alley").

[¶33.] The circuit court found that the Turgeons' undisputed evidence of implied acceptance was lacking, noting contrary evidence that the City "provided limited maintenance" of the Road "commensurate with the maintenance of the Road for pedestrian access," and that the City also limited access to the Road and prevented unrestricted vehicular traffic. However, it is problematic that the circuit court rejected the Turgeons' arguments by concluding they did *not show "by clear and convincing evidence*, both a dedication and acceptance of the Road." (Emphasis added.) In support of its application of the clear and convincing standard of proof, the court relied on *Niemi*, where this Court adopted the clear and convincing

standard of proof as the proper burden to apply in dedication cases.[6]  2015 S.D. 62,

¶ 29, 867 N.W.2d at 732.  But *Niemi* was resolved by a court *trial*, whereas the

present case was resolved via summary judgment.  This distinction is significant,

particularly in light of our proscription against weighing evidence at the summary

judgment stage.  *See Hamilton v. Sommers*, 2014 S.D. 76, ¶ 42, 855 N.W.2d 855, 868

("The judge's function at the summary judgment stage, however, is not to weigh the

evidence[.]").

[¶34.]        Indeed, requiring a party to produce evidence that is sufficient to meet

either a clear and convincing or preponderance of the evidence standard of proof

seems antithetical to the concept of summary disposition under SDCL 15-6-56 (Rule

56) as an alternative to trial.[7]  The plain text of Rule 56 allows a court to enter final

judgment without a trial "if . . . there is *no genuine issue as to any material fact* and

that the moving party is entitled to a judgment as a matter of law."  SDCL 15-6-

56(c) (emphasis added).  The summary judgment standard, by its express terms,

---

6.  The circuit court, expressing some uncertainty in the clear and convincing standard of proof, alternatively applied the preponderance of the evidence standard and held that under either standard, the Turgeons failed to prove implied acceptance by the City.

7.  While the United States Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and this Court in *Saathoff v. Kuhlman*, 2009 S.D. 17, 763 N.W.2d 800, applied a burden of proof at the summary judgment stage, both are libel cases involving public figures.  Both the Supreme Court and this Court have held that such claims require a higher evidentiary burden. *Anderson*, 477 U.S. at 244 (declaring that "in a libel suit brought by a public official, the First Amendment requires the plaintiff to show . . . the defendant acted with actual malice" and "such actual malice must be shown with 'convincing clarity'" (citation omitted)); *Saathoff*, 2009 S.D. 17, ¶ 15, 763 N.W.2d at 805 (explaining that "this higher *evidentiary* burden to prove 'actual malice' extends not only to the proof required at trial, but also in *resisting summary judgment*").

tests the *disputed* nature of factual evidence, not its quantity or relative weight. Logically, if the material facts are truly undisputed, they are established regardless of the burden of proof, leaving only the question of whether a moving party is entitled to judgment as a matter of law.[8]

[¶35.]      Justice Brennan made a similar point in his frank dissent in *Anderson* when responding to the mixed messages within the majority opinion:

> I simply cannot square the direction that the judge "is not himself to weigh the evidence" with the direction that the judge also bear in mind the "quantum" of proof required and consider whether the evidence is of sufficient "caliber or quantity" to meet that "quantum." I would have thought that a determination of the "caliber and quantity," *i.e.*, the importance and value, of the evidence in light of the "quantum," *i.e.*, amount "required," could *only* be performed by weighing the evidence.

*Anderson*, 477 U.S. at 266 (Brennan, J., dissenting).

[¶36.]      The weighing-evidence standard for summary judgment determinations envisioned by *Anderson* becomes particularly awkward on appeal. This Court reviews a circuit court's decision to grant or deny a summary judgment motion "apply[ing] the same test as the trial court." *Bordeaux v. Shannon Cnty. Schs.*, 2005 S.D. 117, ¶ 12, 707 N.W.2d 123, 126–27 (quoting *Fisher v. Kahler*, 2002 S.D. 30, ¶ 5, 641 N.W.2d 122, 125). If the circuit court must assess the strength and amount of the evidence, and we use the same standard without deference on appeal,

---

8.    Some commentators have noted the Supreme Court's exposition of the burden of proof for summary judgment in *Anderson* is, at times, confusing and unworkable. *See, e.g.*, Linda S. Mullenix, *Summary Judgment: Taming the Beast of Burdens*, 10 Am. J. Trial Advoc. 433, 462 (1987) ("So replete is the decision with contradictory pronouncements that opposing counsel can in the future legitimately cite *Anderson's* dicta for completely repugnant propositions.").

then we are also—as an appellate court—called upon to determine the weight of the evidence judged against the standard of a heightened burden of proof. This we cannot do. *See Johnson v. Markve*, 2022 S.D. 57, ¶ 39, 980 N.W.2d 662, 674 ("[O]ur well-settled rules for determining summary judgment prohibit us from focusing parochially on [the moving party's] evidence and, instead, require us to credit the evidence offered by . . . the non-moving party, and any reasonable inferences it supports. To do otherwise would require us to weigh the conflicting evidence—a practice which is, of course, categorically proscribed for courts considering motions for summary judgment.").

[¶37.] Here, the circuit court—alternatively applying a clear and convincing and preponderance of the evidence standard of proof—rejected the Turgeons' argument that there was an implied acceptance of the dedication by the City given its treatment of the Road and the public's use of such Road. In doing so, the court not only failed to account for the inferences raised by the evidence, but it also marginalized the Turgeons' evidence of such acceptance, in favor of the City's evidence. Weighing conflicting evidence regarding the City's implied acceptance is incongruent with our summary judgment standards. Where, as here, the Turgeons produced evidence of conduct supporting the City's implied acceptance of the dedication, it is for the finder of fact through an evidentiary proceeding to determine whether such conduct amounts to clear and convincing evidence of acceptance of the 2012 dedication.

[¶38.] From our review of the record, the inferences from the Turgeons' evidence were sufficient to raise a genuine issue of material fact on this issue. *A-G-*

*E Corp. v. State*, 2006 S.D. 66, ¶ 17, 719 N.W.2d 780, 786 (declaring that to sustain summary judgment not only must there be no genuine issue of material fact, "there must be no genuine issue on the inferences to be drawn from those facts"). Accordingly, the Turgeons were entitled to a trial on the merits of these issues. *Id.* ("When a material fact is in dispute, a trial is required to resolve differing versions of the truth.").

### Conclusion

[¶39.] Based on our review of the record, the circuit court did not err in concluding that the Road was first dedicated for public use via the 2012 Plat. The circuit court also did not err in concluding that the Turgeons failed to establish that the City *expressly* accepted the 2012 dedication.

[¶40.] However, in determining whether there was an *implied* acceptance of the dedication, the circuit court failed to consider logical inferences from the facts we note above, and the court inappropriately weighed the competing evidence regarding this issue. We, therefore, reverse the circuit court's decision granting the City's motion for summary judgment and remand the case for trial on the question of whether there was an implied acceptance of the 2012 dedication by the City.

[¶41.] We affirm in part, reverse in part, and remand for trial.

[¶42.] JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.

[¶43.] GUSINSKY, Justice, not having been a member of the Court at the time this action was considered by the Court, did not participate.